TUIGA TUTAVAL SIALEGA, Claimant,

v.

MALAETASI MAUGA TOGAFAU, Counter-claimant.

[In re Matai Title "SIALEGA" of the Village of Nu`uuli]

High Court of American Samoa
Land and Titles Division

MT No. 06-02

May 7, 2003

Before KRUSE, Chief Justice, ATIULAGI, Associate judge, MAMEA, Associate Judge, and TUPUIVAO, Associate Judge.

Counsel:    For Claimant, Asaua Fuimaono
            For Counter-claimant, S. Salanoa Aumoeualogo

█ Tuiga Tuiavau Sialega *Togafau* ("Tuiga") filed his claim to succession with the Territorial Registrar to be registered as the holder of the *matai* title "Sialega" of the village of Nu'uuli. Malaetasi. Mauga ("Malaetasi") objected seeking succession himself. In the trial of *matai* title cases, A.S.C.A. § 1.0409(c) requires the Court to be guided by the following considerations, in the priority listed:

> (1) the best hereditary right, as to which the male and female descendants are equal in families where this has been customary; otherwise the male descendant prevails over the female;
> (2) the wish of the majority or plurality of those clans in the family as customary in that family;
> (3) the forcefulness, character and personality of the persons under consideration for the title, and their knowledge of Samoan customs; and
> (4) the value of the holder of the title to the family, village, and country.

## FINDINGS

1.    <u>Hereditary Right</u>

█ If we calculate hereditary right according to the traditional method which the Court has employed to calculate degrees of relationship to the title, Malaetasi would prevail as he can show the shortest descent route to a past title holder, his grandfather Sialega Palepoi. Thus his degree of hereditary right is 25%.

■ Tuiga, however, has attempted to invoke the "*Sotoa* rule," which measures entitlement by evaluating descent from the original titleholder. *See In re Matai Title "Sotoa"*, 2 A.S.R.2d 15, 15 (Land & Titles Div. 1986).[1] But the *Sotoa* rule is only workable under circumstances where family history is by and large harmonious. *See In re Matai Title "Misaalefua"*, 1 A.S.R.3d 23, 25 (App. Div. 1997). While the parties here are agreed as to the identity of the original titleholder, Sialega Nono, they are markedly divided on the question of whether or not the first titleholder left issue. Tuiga contends that Sialega Nono did, and that he was succeeded by his son Sialega Pa`ipa`i. Malaetasi, on the other hand, maintains that Sialega Nono was barren and that the second titleholder Sialega Pa`ipa`i was not Sialega Nono's son but his nephew, or the son of his sister Solagaliua.

An added difficulty with employing the *Sotoa* rule in this case is that Tuiga's genealogy, as presented, leaves something to be desired. Beyond his second great-grandfather Tapega, the preceding generational steps in Tuiga's *gafa* (genealogy) are nebulous. Yet these are crucial connections to the first and second titleholders Nono and Pa`ipa`i. This would tend to suggest that his *gafa*, as handed down, was not very well preserved as to detail. Therefore, applying the traditional method, Tuiga's degree of hereditary right is, at best, 3.125%, assuming that his ancestry to Sialega Pa`ipa`i is that of third great-grandson as presented in his *gafa*.[2] We find that while both parties are related to, and, therefore, entitled to succeed to the *matai* title Sialega, Malaetasi prevails under this heading at 25% over Tuiga's averred 3.125% in degree of hereditary right.

2.      The Wish of the Clans

Under this heading, the Court is directed to look to the wish of the majority or plurality of those clans in the family as customary in that family. Here the parties were thoroughly confused with the notion of clans. They both attempted to define clans in terms of descent groups from former selected titleholders and even from certain non-titleholders. To exacerbate matters, the parties varied their positions between their answers to the pretrial questionnaire and their respective responses on the witness stand. In short, neither party had any clear idea as to how the Sialega family is defined in terms of customary clan(s).

---

[1] The *Sotoa* court suggested calculating a candidate's hereditary right by reference to his relationship td the original titleholder as being more desirable, because "every new titleholder does not start a new line of hereditary." 2 A.S.R.2d at 15.

[2] We note for completeness that while Tuiga's *gafa* showed his pedigree through his adopted father, his degree of hereditary right remains the same as his adopted father and natural mother were brother and sister.

■ Beyond the confusion, however, and speaking of "clan" in terms of a group of people descendant from a common ancestor, *see Filipo v. Maiava*, 4 A.S.R. 313, 316 (Trial Div. 1962), it appears from the evidence that the Sialega family conducts its business as a single clan entity. In its various meetings or gatherings to select a *matai*, the family appeared to act as a unitary and cohesive entity; there were no apparent customary groupings to speak of, and we saw no evidence whatsoever to suggest that the family conducted its business as a multi-sided entity.[3] On the contrary, the evidence alluded to the *fa`aaloalo* (due deference) being given to family elders, like High Chief Pone, without reference to any specific descent group. All in all, the evidence suggests, and we so find, that the Sialega family is by custom and tradition a single clan entity.

We further find on the evidence that the Sialega family was duly convened and met on several occasions to select a successor *matai*. At these meetings, the family, which included representatives of Tuiga's own immediate family, overwhelmingly favored the appointment of Malaetasi. Indeed, at the conclusion of one these family meetings, the `ava cup was presented to Malaetasi.

We find that Malaetasi prevails on the criterion.

3.     Forcefulness, Character and Personality, & Knowledge of Samoan Customs

■ Under this heading, the Court can look to "personal demeanor, presence of mind, the clarity, speed, and correctness with which answers were given, candidness, the ability to stand up to rigorous cross-examination, the education, the self-confidence, and other qualities which are reflected from the speech and behavior of the candidates, matters which can be assessed only from the personal observation of each individual candidate." *See Asuega v. Manuma*, 4 A.S.R. 616, 629 (Trial Div. 1965); *Reid v. Tafalele*, 4 A.S.R. 458, 463-64 (Trial Div. 1964); *Fagau v. Tulei*, 4 A.S.R. 490, 493 (Trial Div. 1964). At the same time, the Court will also look to objective indices such as "[l]eadership ability, honesty, education, public service, involvement in church and village affairs" to assist in the evaluation of this criterion. *In re Matai Title "Leaeno,"* 25 A.S.R.2d 4, 8 (Land & Titles Div. 1994).

---

[3] The familiar notion of family clans being defined by Samoan custom as descent groups from the children of the first titleholder does not, on the basis of the evidence before us, appear to apply to the Sialega family. Malaetasi's *gafa* suggests, on the one hand, that the first titleholder, Sialega Mono, was barren, while Tuiga's *gafa* ignores this subject matter altogether.

We find that the parties are more or less on parity with respect to knowledge of Samoa customs. However, as to the issue of forcefulness, character and personality, we rate Malaetasi ahead-of Tuiga. In terms of personal factors gained from observing a candidate on the witness stand, Malaetasi better impressed us. He was more straightforward in his responses, both on direct and cross-examination. Tuiga, on the other hand, was not beyond embellishment and spin.[4] Whereas Malaetasi was comfortable testifying in the language of the *matai*, Samoan, Tuiga was more at ease testifying in English.

In terms of personal development and achievement, Malaetasi has relatively excelled in his educational and vocational pursuits. A lawyer by training and profession, Malaetasi has held a number of high ranking government positions, including that of Assistant Public Defender, Legislative Assistant to the Territory's Delegate-at-large and Congressional Office in Washington D.C., District Court Judge, Attorney General, and Fono Representative for the Ituau County. Notwithstanding his history of prestigious government offices, Malaetasi's sense of humility has been very clearly evident in the fact that he has openly rendered *tautua* for many, many years to his family, village, and church in the subservient, but critical, role of an untitled man. Consistent with the old proverb, Malaetasi has earned the honor of *pule* (*matai* authority) through his *tautua*.

In short, Malaetasi's personal achievement record, his candor, his willingness to render *tautua*, and his humble nature, speak more convincing in terms of forcefulness, character and personality. He prevails, in our view, on this criterion.

4.    Value to Family, Village, and Country

After achieving a law degree, Malaetasi returned immediately to the territory to actively serve his family, village, church, and government. Tuiga, on the other hand, has only recently returned to the Territory, after retiring from a career with the State of Hawaii's Department of Public Safety.

In terms of value to family, Malaetasi has access to greater financial resources and is thus in a better position to support the demands of the *matai* title. Hence he is in this regard of greater value to the family. *See Filipo v. Malaya*, 4 A.S.R. 313, 317 (Trial Div. 1962).

---

[4] A specific instance of *tautua* (traditional "service") to the village given by Tuiga was his cleaning the stream that runs next to his home, while an instance of *tautua* given to the American Samoa Government was his payment of federal taxes whilst working in Hawaii.

242

In terms of value to country, Malaetasi has served the government in all its three branches. He is currently serving as the Territory's first Administrative Law Judge, a position which is appointed by the Governor and approved by the Senate. Moreover, his value to the Territory has been very apparent with the number of government commissions which he has been asked to serve: the Real Property Management Board, the American Samoa Development Bank Board, the Scholarship Board, Capital Improvements Project Committee, as well as legal advisor to Constitutional Review Committee. Again, his service to the American Samoa Government has been specific and direct. Tuiga's has been less specific and indirect—for example, his payment of federal taxes.

In our view, Malaetasi also prevails under this heading.

## CONCLUSIONS & ORDER

On the foregoing, we conclude that Malaetasi is qualified to hold the title Sialega. He prevails on hereditary considerations, as well as on the second, third, and fourth criteria specified by A.S.C.A. § 1.0409(c).

The Territorial Registrar shall, in accordance with A.S.C.A. § 1.0409(b), register the *matai* title Sialega, attached to the village of Nu'uuli, in candidate Malaetasi Mauga Togafau.

It is so ordered.